## LOVE v. WHEELER.

### (Circuit Court, S. D. New York. May 27, 1898.)

STOCK HELD IN TRUST—ASSIGNMENT—ASCERTAINMENT AND ACCOUNTING.
> Complainant's assignor delivered to defendant a large amount of stock in a corporation in which he was the principal stockholder, and of which defendant was the general manager. Defendant had power to transfer the stock, and alleged that he held a portion of it, which he had transferred to himself, under a parol trust agreement, for the promotion and benefit of the corporation and the protection of persons who might be induced to invest in it, but produced no evidence in support of his testimony to that effect, while the letters and other documentary evidence all showed that the directions of the owner, as given from time to time, as to the disposal of the stock, were to be followed. Defendant alleged and testified that a portion of the stock was held for the joint benefit of himself and complainant's assignor, but the evidence was vague and unsatisfactory. *Held*, that the stock admitted to be held in trust was so held for the exclusive benefit, and subject to the direction, of complainant's assignor, and should be transferred to defendant, as trustee for complainant, and that complainant is entitled to an ascertainment of all the stock held by defendant, and an accounting as to receipts and disbursements, if any, by the trustee.

This was a suit in equity, brought by Robert W. P. Love against Albert G. Wheeler for an accounting as to certain stock delivered to Wheeler in trust by John C. Love, and assigned to complainant. The ruling is upon the hearing on proofs taken on both sides.

Wm. S. Beaman, for complainant.
Robert L. Harrison, for defendant.

SHIPMAN, Circuit Judge. The bill alleges that John C. Love, now temporarily residing in England, was on August 14, 1895, the beneficial owner of a large amount of stock of the Love Electric Traction Company, and that the defendant was the trustee for said Love of about 20,000 shares of said stock, the exact number of shares the complainant being unable to give; that on August 14, 1895, John C. Love assigned to his son, the complainant, all the father's right in this stock so held in trust; that the trust is still open and continuing, and the defendant has never rendered any account. The bill prays that the defendant may be required to render an account of the trust, and of all property held under it, and of his receipts and disbursements as trustee; and for other and further relief as may seem proper. The bill does not state the terms or the nature of the trust.

The answer alleges that the defendant holds the stock under a trust agreement, states its terms, and avers that he has never sold the stock; that none of the objects for which the trust was created have been accomplished; that he has received nothing; that claims are pending against John C. Love, and until they are settled it is impossible to render an account. Proofs on both sides were thereupon taken.

John C. Love was an inventor and patentee of the invention described in four patents for improvements in a conduit system for electric railways and in electric appliances. On October 18, 1890, he entered into a written agreement with Albert G. Wheeler, the defendant, now a resident of the city of New York, and citizen of the state of New York, in regard to the incorporation of a company with a capital of $10,000,000, for the development of these patented inventions. It is not necessary, for an adequate knowledge of this case, to state the terms of this agreement. On December 9, 1890, the corporation, by the name of the Love Electric Traction Company, was established in Chicago, Ill., with a capital of $10,000,000, in 100,-000 shares of $100 each, for the purpose of placing these improvements in active operation. John C. Love subscribed for 99,998 shares, Homer N. Hibbard and the defendant each subscribed for one share. Love transferred his four patents to the company, and received on January 5, 1891, a certificate for 99,998 shares, which, on February 9, 1891, was exchanged for a certificate for 50,000 shares (which were to be treasury stock), and 33 certificates—Nos. 5 to 37, inclusive—for 49,998 shares in all. All these certificates were in Love's name. On May 7, 1891, Wheeler, who was and is the vice president and general manager of said company, received from Love certificates Nos. 6, 7, and 8, for 5,000 shares each, and certificates 13 and 14, for 1,000 shares each, making 17,000 shares in all. These certificates were assigned to Wheeler, and are the bulk of the stock which is the subject of the present suit. Wheeler testifies that they were received by him in trust, in accordance with an oral trust agreement which was made before the organization of the company, which was never put in writing, and has never been modified. This agreement, Wheeler testifies, was that he should "hold the stock for the benefit of the company, and for its promotion, until it should get on a financial basis," and to carry out certain agreements which were "to protect the parties investing in the Love Company, take care of the personal obligations of Mr. Love, and the assignment of patents for the company and Mr. Love, and any of the obligations, and to hold it so that it should not be in any way put upon the market to interfere with those who had invested in the company." He further testified that:

"The understanding in holding this stock as trustee was that it was to be held so as not to interfere with the investments of any that might come in this company to assist in the financing of the company, and I calculated that that would cover all that had any interest in the Love Company, and the names of the persons would be the names of the stockholders. The principal idea of forming this trusteeship was for the protection of those who were interested and to be interested in this company."

The witness further explained the trust agreement as follows:

"The company was incorporated in the winter of 1890, with the understanding, if incorporated, that this block of stock should remain in my hands until the company was properly financed, in order that the investments of those coming into the company could not in any way be impaired by it; and efforts were made in every direction from that time until this to try to get the proper people who could have influence to assist the company in having its system adopted, and up to this time we have failed, as street-railroad men are absolutely opposed to doing anything that will help or aid the adoption of this company's system."

In regard to a retransfer to Love after the purposes of the trust had been fulfilled, answers were made by Wheeler in reply to questions as follows:

"There was no agreement that after the purposes of the trust were performed that you were to retransfer the stock to Mr. Love? A. No; no such agreement. The purpose of placing the stock there was to finance the company, and it would have been necessary, probably, for the sale of such stock and the accounting to Mr. Love for what might be due him under such sale; and if it was found necessary not to sell all of it, what interest he would be entitled to would be accounted to him for." "Were you in any event, under this trust, to retransfer any stock to Mr. Love? A. There was never anything stated in what shape it might be returned to him. It might have been returned by retransfer, as you call it, or accounting to him for it."

This vague and inexact statement of the alleged trust seems, in connection with Wheeler's other testimony, to mean that he was to hold the stock, and control its sale, until the company was properly "financed," by which he says he meant until the company has a sufficient revenue from its business, and that he was to sell the stock in such manner as to promote the financial welfare of the company, and to such persons as would not interfere with the interest which was in control of the company. In other words, Wheeler held the stock with power to sell it, not according to Love's directions or individual pecuniary interest, but according to his own opinion of the proper time of sale and proper purchasers, and the benefit which would come to the company from its sale. The company has never been in good financial condition, and the time has never arrived, in Wheeler's opinion, when the stock could properly be sold. This so-called trust is not in accordance with any written paper or document in the case which was made by or which was seen by Wheeler. On May 7, 1891, he signed the following receipt, which is in his handwriting:

"Received from John C. Love, certificates numbers as follows of the Love Electric Traction Company stock, with par value $100.00:

| Numbers. | | | |
|---|---|---|---|
| Certificate | 6 | ...................... 5,000 | shares. |
| " | 7 | ...................... 5,000 | " |
| " | 8 | ...................... 5,000 | " |
| " | 13 | ...................... 1,000 | " |
| " | 14 | ...................... 1,000 | " |

Total, 17,000 shares.

"Same to be held by me in trust until the declaration of trust given by John G. Shortall to John C. Love has been carried out, when I am to dispose of the said seventeen thousand shares according as I have been directed by said John C. Love."

The terms of the Shortall trust have not been stated, but they have been apparently satisfied, and have no bearing upon the present case. On June 30, 1894, Love sent Wheeler the following directions:

"You are hereby authorized to sell for me seventeen thousand five hundred shares of the capital stock of the Love Electric Traction Company now held in trust by you for the sum of one hundred & twenty-five thousand $^{00}/_{100}$ dollars, provided the same shall be paid to me on or before November 1, 1894. Should no sale be consummated, and the proper payments made to me for the same on that date, November 1, 1894, then you shall continue to hold said stock as trustee, same as before this letter was written."

The manner in which this additional 500 shares came into the amount held by Wheeler will be stated hereafter.    The next written declaration of the authority or agency by Wheeler is contained in what is called Mr. Love's will, dated October 4, 1894.    In this singular document Wheeler is appointed executor, and is instructed to follow specific directions which are given, and which are:

"That the contract authorizing him to sell seventeen thousand five hundred shares of the capital stock of the Love Electric Traction Company, which should expire Nov. 1st, 1894, is hereby extended as to time, so as in no way to upset or interfere with the carrying out of the provisions herein to be set forth as this, my last will and testament.

"Section 1. It is my wish to set aside from the realization of my effects the sum of fifteen thousand $^{00}/_{100}$ dollars, which must be used to settle in full every indebtedness against me, and, after such indebtedness has been fully liquidated, and receipts in full for the same have been given, I authorize the payment of the following sums to the following parties: [These sums amount to eighty-five thousand dollars, among which are $25,000 to Wheeler and his family.    The will then provides as follows:]

"Section 2. The remaining amount to be realized under the contract I authorize Albert G. Wheeler, as my executor, to pay the sum of ten thousand dollars to a certain party known to us both, who has rendered me valuable services, and whatever else may be realized from my interests in all foreign patents, as well as under this contract, shall then be paid to Mary A. Love, my wife.    I also hereby authorize Albert G. Wheeler, as trustee, should the sale be made of the seventeen thousand five hundred shares of stock of the Love Electric Traction before my death, to carry out the conditions and payments according to section 1 of this, my last will and testament, and, after such payments have been made, to set to my credit all moneys and interests then due, serving me with prompt notice that such conditions have been complied with and carried out, that I can at such time give further instructions."

This document would have no importance as against Wheeler were it not for the fact that he saw it, knew its contents, and inserted in his handwriting the date and the words "Signed in New York City."    In October, 1894, Love went to Europe, and has remained there ever since.    Wheeler probably had a duplicate original of the will in his possession.    It was revoked on February 11, 1896.    On April 12, 1895, Wheeler wrote Love, asking him if he would take $100,000 for his "entire interest," to which Love replied on April 23, 1895, that he would take that sum for his "interest in America on the following conditions: To be closed at once, and all indebtedness and past agreements shall be canceled, I having the one hundred thousand clear, of which pay over to my wife the sum of $75,000, and the remaining $25,000 to me in London."    This sale was never made.    On August 14, 1895, John C. Love transferred to his son, the complainant, a resident and citizen of the state of Pennsylvania, all his interest, right, and title in the company; and also on the same day signed an order upon Wheeler to deliver to his son all his stock in the company.    Wheeler refused, on September 2, 1895, to deliver the stock, saying that it was held under a private confi-

dential trust. John C. Love has transferred to the company 17 patents for his inventions in electrical conduits or appliances which were issued on and after November, 1897. The three certificates Nos. 6, 7, and 8, for 5,000 shares each, the defendant kept until December 10, 1895. He then surrendered them to the company, and received in lieu thereof 15 certificates in his own name for 1,000 shares each, being numbers 271 to 285, inclusive. Most of these certificates still remain in his own name. In 1896 he transferred all the stock in Nos. 282 and 285 and part of the stock in No. 284 to other parties. He has transferred the stock in No. 13 and in No. 14 at various times, beginning at November 6, 1893, to various parties. He has now certificates for 17,500 shares in his own name, which he acknowledges to be the stock of which he is trustee for John C. Love. Shortly before January, 1898, 29,757 shares stood in Wheeler's name. On December 31, 1891, the company issued to John C. Love certificate No. 84, for 4,000 shares. These 4,000 shares were transferred to Wheeler on December 12, 1895, and four new certificates for 1,000 shares each, Nos. 287 to 290, inclusive, were issued to him, and all these shares still stand in his name. He testifies that this stock was outside of the trust, was never held under a trusteeship, but was to be used for the "promotion" of the company; that they owned it jointly, and that the unexpended part of the proceeds was to be divided. Wheeler thinks that the extra 500 shares in the letter of June 30, 1894, came from Love's interest in the 4,000 shares which belonged to him at the date of that letter. No particulars in regard to any sales of 4,000 shares, or any part thereof, which were supposed to represent the stock in certificate No. 84, were given. The complainant offered no testimony in regard to these shares. The defendant testified that they never belonged to the trust, unless 500 shares were put into it by agreement made on or before June 30, 1894. The testimony is too indefinite and uncertain to permit any finding to be made in regard to these 4,000 shares, except that somehow, and from some quarter, 500 shares have been added to that trust. There should be an ascertainment whether any part of the other 3,500 shares belongs to a trust in which John C. Love was, and the complainant is, beneficially interested.

There is no document or letter in this case which was signed by John C. Love, or which was written by Wheeler, which confirms the idea that Wheeler was to hold the 17,500 shares of stock upon any other trust than to sell and convey it, and pass over the avails in conformity with the directions given by John C. Love from time to time. The letter of June 30, 1894; section 2 of the will, which gave directions as to the disposition of the avails of the stock, if sold before Love's death; the letter of April 23, 1895,—all show that his directions, as modified from time to time, were to be ascertained, and were to be followed. Wheeler's position was apparently very much that of an ordinary agent or attorney who holds a power of attorney to sell and convey stock in a company in which both principal and agent happen to be largely interested. If any inequitable result to the company or to Wheeler comes from this conclusion, the

result will be due to the fact that from the inception of the company, in 1891, to the time of the transfer to the complainant, in 1895, Wheeler has no piece of paper which verifies his statement of the trust, and that the papers which passed between the parties do not support the kind or the terms of a trust which he says existed. While the relations between John C. Love and Wheeler were in some respects like those of an agent and principal, they were styled by the parties to be of a fiduciary character. Love voluntarily placed his certificates of stock in the possession of Wheeler, with power to transfer them to himself. They have been thus transferred to himself or to others, and Wheeler now has certificates for 17,500 shares in his own name, of which he is the legal owner, and which he holds for the exclusive benefit, and to be disposed of according to the exclusive directions, of Love. This condition of affairs brings the property into the condition of a trust, which "in the most enlarged sense in which that term is used in English jurisprudence, may be defined to be an equitable right, title, or interest in property, real or personal, distinct from the legal ownership thereof." 2 Story, Eq. Jur. § 964. The trust was an express one, voluntarily entered into by Love, and in regard to property in which Wheeler has no pecuniary interest, and upon which he has no apparent lien. The allegations of the bill were limited to stock of which the defendant is a trustee, and the terms of the decree must be confined to that class of stock. The bill avers that the trust is still open and continuing, and asks for an account of it, and of all property held thereunder, and of all the defendant's receipts and disbursements as trustee. I have not, therefore, considered the question whether there has been a revocation of the trust, or, if there had been, what would be a proper decree. The certificates for 17,500 shares of stock should be placed in the name of Albert G. Wheeler, as trustee for the complainant, so that the certificates should distinctly show that the beneficial interest is in him. Let there be an interlocutory decree directing the transfer of the certificates for that number of shares to Albert G. Wheeler, as trustee for the complainant, and for a reference to a master for an ascertainment of the entire amount of the stock of said company held by the defendant under any trust for John C. Love and for the complainant as assignee, and for an accounting of all the defendant's receipts and disbursements, if any, as trustee of said trust property.